# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JASON JAYAVARMAN,<br><br>    Defendant. | Case No. 3:13-cr-00097-SLG |

## ORDER REGARDING CLAIM 1 OF MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

Before the Court at Docket 316 is defendant Jason Jayavarman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The government opposed the motion at Docket 328. Mr. Jayavarman filed a reply at Docket 329. Mr. Jayavarman filed an amended motion at Docket 332, which is also before the Court. The Court previously issued an order denying Claim 2.[1] This order address the only remaining claim, Claim 1. The Court held an evidentiary hearing on Claim 1 on November 13, 2020.[2] Two witnesses testified: Mr. Jayavarman and his trial counsel, Rex Butler.

---

[1] Docket 334.

[2] Docket 340 (minute entry).

Having considered each parties' filings, the admitted exhibits, the relevant transcripts, and the testimony presented at the evidentiary hearing, the Court now makes the following findings of fact and conclusions of law.[3]

## BACKGROUND

The full procedural history and factual background in this case are set forth in the order at Docket 334. The following background is relevant to Claim 1, in which Mr. Jayavarman asserts that trial counsel "was ineffective for failing to communicate a formal plea offer to Jayavarman prior to its expiration."[4]

Before trial, the parties discussed a possible plea agreement. On August 12, 2014, counsel Rex Butler wrote to Assistant United States Attorney (AUSA) Audrey Renschen:

> I met with my client and provided him with a copy of the various scenarios, however, those certain scenarios we reviewed created certain zones depending on certain circumstances but as things stand today it appears we still do not have a particular offer. Please correct me if I am mistaken. My client and I can only speak in hypothetical terms at this point, as we have yet to be provided with anything of real substance in terms of an actual offer. If your office is so inclined my client would like to see something in writing.[5]

---

[3] The Court has not set out its findings of fact and conclusions of law in an enumerated list but instead sets them forth in narrative format in an effort to make for a more cohesive order.

[4] Docket 332 at 4 (capitalization altered).

[5] Docket 328-1 at 4.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 2 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 2 of 17

On August 13, 2014, AUSA Renschen replied:

> There actually was a "particular offer" made at our August 17th, 3 pm meeting[6] in the United States Attorney's Office with you, Attorney Vickram Chaobal, [and others].
>
> The offer extended was to plead guilty to Count 6 of the Indictment – Travel with Intent to Engage in Illicit Sexual Conduct (18 U.S.C. §§ 2423(b) and (e)), as an attempt/aiding and abetting – with open sentencing . . . . As you remember, that count carries no mandatory minimum prison sentence, unlike Count 1, that carries a mandatory minimum of 15 years imprisonment.
>
> ***
>
> We agreed that you would respond by the end of last week. At this point, we are proceeding with trial preparation.[7]

The same day, August 13, 2014, Mr. Butler responded:

> It certainly jogged my memory and you are correct. I recall these things just as you have presented them here.
>
> I will go back down to the jail and present this to my client and get back with you as soon as possible. I've been in 3 back to back trials and have been in trial for five straight weeks.[8]

On August 26, 2014, AUSA Renschen sent a formal, signed offer letter to Mr.

Butler:

> This letter is to confirm today's telephone conversation about extending the plea agreement offer until September 10, 2014. *As you know, and as I should have emphasized in our conversation, it is very unusual to reopen a plea offer*, but this is being done because

---

[6] The Court believes this date was a typographical error. The e-mail sent on August 13 incorrectly stated that the meeting had occurred on August 17. At the evidentiary hearing, the parties referred to the meeting as occurring on July 17, 2014. Docket 346 (hearing transcript) at 33 (under seal).

[7] Docket 328-1 at 5.

[8] Docket 328-1 at 6.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 3 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 3 of 17

> of your unexpected situation of being in three back to back trials for seven straight weeks.
>
> The offer is to plead guilty to Count 6 of the Indictment—Travel with Intent to Engage in Illicit Sexual Conduct (18 U.S.C. §§ 2423(b) and (e)), as an attempt/aiding and abetting the travel of another—with open sentencing . . . .
>
> As you know, the guilty plea to Count 6 carries no mandatory minimum prison sentence. The most obvious and important benefit of the plea agreement for your client is that Count 1, Production of Child Pornography, will be dismissed. Mr. Jayavarman will thus avoid the certainty of at least 15 years imprisonment – the mandatory minimum sentence on that charge. (All charges other than Count 1 will also be dismissed).
>
> **In order to benefit from this agreement, you must advise me on or before noon on September 10th** that your client wishes to accept the plea agreement. This is a firm deadline. If you do not so advise, the case will proceed to trial and no further plea offers will be possible . . . .
>
> If Mr. Jayavarman accepts the offer by noon on September 10th, we will quickly provide you with the written plea agreement . . . .
>
> If Mr. Jayavarman does not accept the offer, of if you do not advise us of his acceptance by noon on September 10th, then we will proceed to the Grand Jury with a superseding indictment, and we will so advise the Court at the September 17th status hearing. As I told you, at that point, we will proceed to trial and no other offers will be made.[9]

(hereinafter "the Count 6 offer"). The issue before the Court is whether Mr. Butler ever presented the Count 6 offer to his client Mr. Jayavarman.

---

[9] Docket 317-1 at 2–3 (emphases in original).

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 4 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 4 of 17

**LEGAL STANDARD**

In order to succeed on an ineffective assistance of counsel claim, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, which requires him to show both deficient performance of counsel and resulting prejudice.[10] Deficient performance requires a showing that trial counsel's representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms.[11] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[12]

As to plea offers, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and if "defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires."[13]

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed . . . because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel" and

---

[10] 466 U.S. 668, 687 (1984).

[11] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

[12] *Strickland*, 466 U.S. at 689.

[13] *Missouri v. Frye*, 566 U.S. 134, 145 (2012); *see also Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002) ("*Strickland*'s two-prong test applies to ineffectiveness claims arising from the plea process.").

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 5 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 5 of 17

"demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it."[14] The defendant must also "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."[15]

Mr. Jayavarman carries the burden of proving by a preponderance of the evidence that he is entitled to relief due to the ineffectiveness of his counsel and the resulting prejudice.[16]

## DISCUSSION

Claim 1 turns on whether Mr. Butler timely communicated the Count 6 offer to Mr. Jayavarman prior to its expiration on September 10, 2014. The Court finds that Mr. Jayavarman has not carried his burden of proving that Mr. Butler failed to communicate this offer for the following reasons.

**I.    Mr. Butler's testimony that he timely conveyed the Count 6 offer to Mr. Jayavarman is more credible than Mr. Jayavarman's testimony that he did not learn of the offer until after trial.**

At the evidentiary hearing, Mr. Jayavarman testified as follows: In December 2013 he asked Mr. Butler to get him a plea deal.[17] Mr. Butler

---

[14] *Missouri v. Frye*, 566 U.S. at 147.

[15] *Id.*

[16] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

[17] Docket 346 at 10, 14.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 6 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 6 of 17

discussed possible plea scenarios with him in November and/or December 2013 but never presented an actual offer from the government.[18] Mr. Jayavarman tried calling Mr. Butler's office a few times in 2014, possibly in June 2014, but was always told that his lawyers were not available.[19] Mr. Butler never presented him with a plea offer in 2014 and in fact never visited him at the Anchorage Jail or spoke to him on the phone for the entire year of 2014.[20] Mr. Jayavarman never told Mr. Butler that he wanted to go to trial,[21] and if the Count 6 offer had been presented to him, he would have accepted it because he would not have been subject to a mandatory minimum sentence.[22] The first time he learned about the Count 6 offer was shortly after he was convicted at trial and his new counsel sent him a copy of Mr. Butler's file, which contained a copy of the offer.[23]

In contrast, Mr. Butler testified to the following: That he had "a number of conversations with Mr. Jayavarman in which Mr. Jayavarman was not interested

---

[18] Docket 346 at 8.

[19] Docket 346 at 7-8.

[20] Docket 346 at 6, 7, 8–9, 14.

[21] Docket 346 at 10.

[22] Docket 346 at 9–10.

[23] Docket 346 at 9, 21. At the recent evidentiary hearing, Mr. Jayavarman testified that he first saw the offer shortly after trial concluded in March 2015 and that he pointed out to his new counsel then, but his new counsel did not "seem to be interested in this [Count 6 offer] letter . . . I don't know what he did. I do not know." Docket 346 at 22. However, although Mr. Jayavarman filed numerous post-trial motions in 2015 and 2016, he did not raise this issue to the Court until his resentencing in June 2018.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 7 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 7 of 17

in any pretrial deal in this case, period."[24] Those conversations took place both in person at the jail and over the phone.[25] He "specifically remember[ed] speaking with Mr. Jayavarman on more than one occasion about an offer and he turned them down each time."[26] Instead, Mr. Jayavarman "kept saying that he could prove that the [victim] was of age. That's what he kept saying. That was the scenario that he kept pushing."[27]

The Court finds that Mr. Butler was pursuing a plea offer for Mr. Jayavarman, at least as of August 2014. That month Mr. Butler wrote to the AUSA that he and Mr. Jayavarman had been discussing possible plea scenarios, but that "it appears we still do not have a particular offer . . . we have yet to be provided with anything of real substance in terms of an actual offer."[28] Mr. Butler specifically requested an offer in writing.[29] Mr. Butler then promptly acknowledged that he had forgotten that the government had in fact made an offer and wrote to the AUSA that her reply "jogged [his] memory" as to the Count 6 offer made during a previous meeting.[30] After the AUSA formally extended the

---

[24] Docket 346 at 24–25*; see also* Docket 346 at 25–26 ("[H]e specifically told me he was not interested in doing any jail time on the case and taking an offer.").

[25] Docket 346 at 25.

[26] Docket 346 at 25.

[27] Docket 346 at 27.

[28] Docket 328-1 at 4 (Aug. 12, 2014 e-mail).

[29] Docket 328-1 at 4 (Aug. 12, 2014 e-mail).

[30] Docket 328-1 6 (Aug. 13, 2014 e-mail).

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 8 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 8 of 17

Count 6 offer, he told the government attorney he would "go back down to the jail and present this [Count 6 offer] to my client and get back with you as soon as possible."[31]

The Court finds it considerably more likely than not that Mr. Butler in fact timely presented the Count 6 offer to Mr. Jayavarman. Although Mr. Butler did not have any direct recollection of conversations that occurred six years ago, he explained that it "would make no sense" for him to "ask for an extension of a pretrial offer and simply not give [the offer] to the client."[32] The Count 6 offer was quite favorable to Mr. Jayavarman in that it contemplated the dismissal of five counts and would have allowed him to plead to a charge that did not carry a mandatory minimum. The Court finds it very unlikely that Mr. Butler would have not conveyed this offer to Mr. Jayavarman after he received it in writing, particularly because it was also quite beneficial to Mr. Jayavarman that the government agreed to extend the deadline on the offer.

The Court finds Mr. Jayavarman's repeated testimony that neither Mr. Butler nor his co-counsel visited him in the jail or spoke to him on the phone for the entire year of 2014 to be not credible for three reasons. First, in 2014 Mr. Jayavarman's defense counsel filed two motions for bail review hearings (each of which was later withdrawn), filed a motion to dismiss, made multiple

---

[31] Docket 328-1 at 6 (Aug. 13, 2014 e-mail); Docket 346 at 36–37.

[32] Docket 346 at 25.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 9 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 9 of 17

appearances in court with Mr. Jayavarman, and co-counsel Vikram Chaobal attended a status conference with Mr. Jayavarman in June 2014 at which Mr. Chaobal represented that Mr. Jayavarman was strongly opposed to the trial continuance that the government had sought.[33] The Court finds it very unlikely that defense counsel would have undertaken those actions in Mr. Jayavarman's case in 2014 without speaking or meeting with him during that entire year.

Second, the two defense counsel were privately retained by Mr. Jayavarman. The Court finds Mr. Butler's explanation of that fact's significance to be persuasive:

> [T]here is no way that I have ever in my life represented somebody for several months or longer and they were incarcerated and I never went to the jail to see them. I don't think there is any client that would ever put up with that . . . .
>
> I'm in the private sector. And so being in the private sector, you have to meet the needs and the wants of these clients or your name goes bad. It's just that simple. And you cannot get hired by someone who is as sophisticated [as] Mr. Jayavarman, [t]here is no way he's going to let you represent him, he's going to pay you and let you represent him for any period of time and you don't go down to the jail and see him. It's not going to happen.[34]

Third, when cross-examined as to why his name did not appear in the jail visitor logs during as having visited Mr. Jayavarman, Mr. Butler explained in detail how the sign-in system operates at the local jail and how if an attorney visits in

---

[33] *See, e.g.*, Dockets 48, 49, 50, 57, 63, 64, 77, 85, 95, 186 at 2.

[34] Docket 346 at 46–47.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 10 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 10 of 17

the evenings they often did not sign the visitors log.[35] Mr. Butler further explained that because 95 percent of his practice is criminal defense, he routinely visits the jail and usually does so in the evening to avoid having to wait in the jail lobby during the day when there are more visitors and the visitor desk is staffed.[36] The fact that the jail logs show that Mr. Butler did occasionally sign into the jail log on some evening visits was fully consistent with his testimony that he regularly visited the jail in the evening; that most of the time, the correctional officers in the evening would simply take him right back to visit, but some correctional officers would require that the log book to be filled out even in the evening.[37] The Court finds this testimony credible.

**II.   At a pretrial hearing, Mr. Jayavarman did not contest Mr. Butler's statement to the Court that he did not want to accept a plea offer.**

It is uncontested that on September 22, 2014, twelve days after the Count 6 offer expired, there was a pretrial hearing in Mr. Jayavarman's case, which both Mr. Butler and Mr. Jayavarman attended. During that hearing the AUSA told the Court that an offer had been made to Mr. Jayavarman but that the deadline to accept the offer had passed, and she had "just checked with him today and he

---

[35] Docket 346 at 28–29, 38–40, 44–45.

[36] Docket 346 at 39–40. Mr. Butler testified that "Sunday night through Thursday night, I make a lot of jail visits." Docket 346 at 40.

[37] Docket 346 at 44–45.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 11 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 11 of 17

indicated that his client was not interested in the offer."[38] Mr. Butler responded that the AUSA had made an offer, and "I did discuss the matters with my client. And at this time, he prefers to go to trial."[39] Mr. Jayavarman was present with Mr. Butler in court for that hearing but did not indicate that he had not discussed any plea offer with Mr. Butler, nor did he indicate that he did not want to go to trial.

At the evidentiary hearing, Mr. Jayavarman gave several reasons for why he did not interject or correct this information at the pretrial hearing. He testified that at the time he did not understanding English very well, that he did not hear his attorney tell the Court about the plea offer, and that he was not paying attention during the pretrial hearing.[40] He also explained that it had been so long since he had spoken to Mr. Butler about a plea deal in December 2013 that by September 2014 it was "not really in his head and I completely forgot."[41]

Mr. Butler's testimony refutes Mr. Jayavarman's explanation. Mr. Butler testified that during his representation of Mr. Jayavarman, he did not have trouble communicating with him in English, that Mr. Jayavarman ran a local business where he had frequent contact with the English-speaking public, and that he was

---

[38] Docket 330 at 3.

[39] Docket 330 at 3.

[40] Docket 346 at 13, 17–18.

[41] Docket 346 at 16.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 12 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 12 of 17

hardworking and "not the kind of person who just lays back lackadaisical and just let's thing[s] go on around him."[42]  Mr. Butler also testified that "Mr. Jayavarman is a sophisticated, intelligent individual."[43]

The Court finds that Mr. Jayavarman's statement that he did not understand English very well in September 2014 to be not credible.  Mr. Jayavarman did not request to have an interpreter during his trial in March 2015.[44]  At sentencing, an FBI agent testified that the Facebook page for Mr. Jayavarman's business was in English[45] and that she had listened to approximately ten hours of audio and video recordings of Mr. Jayavarman having conversations that were all in English.[46]  Moreover, at the time of trial Mr. Jayavarman had been living in the United States for almost 30 years and had "long operated a youth hostel in Anchorage that required communication with customers in English[.]"[47]

---

[42] Docket 346 at 29–30, 32.

[43] Docket 346 at 47.

[44] *Cf. United States v. Jayavarman*, 871 F.3d 1050, 1064 (9th Cir. 2017) ("Jayavarman did not provide any indication that he was having difficulty participating in the proceedings until after the trial was over.  We conclude that the district court did not clearly err in determining that Jayavarman was sufficiently proficient in English that he did not require an interpreter.").

[45] Docket 249 at 18.

[46] Docket 249 at 19.

[47] *Jayavarman*, 871 F.3d at 1066 (holding that "district court's finding that Jayavarman spoke and understood English well enough that he did not require an interpreter in order to sufficiently comprehend the proceedings was well supported and was not clearly erroneous").

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 13 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 13 of 17

The Court also finds Mr. Jayavarman's explanation that he was not paying attention at the pretrial hearing to be not credible. Mr. Jayavarman was aware that he was facing a long prison sentence, having told an associate in a 2013 jail call that if he were convicted, he would "never see the sun again."[48] The Court finds it highly improbable that a defendant facing such serious charges would not be paying attention to the Court, the prosecutor, or his own attorney during a pretrial hearing. Likewise, Mr. Jayavarman's testimony that by September 2014, while in pretrial detention, he had simply forgotten about the idea of negotiating a plea is not credible.

### III. Objective evidence supports Mr. Butler's assertion that Mr. Jayavarman wanted to go to trial because he did not think he would be convicted.

Mr. Butler testified that Mr. Jayavarman had told him that "he was not interested in doing any jail time on the case and taking an offer."[49] Mr. Butler also testified that he "specifically remember[s] speaking to him about taking an offer and he kept saying that he could prove that the young lady who was his girlfriend at the time was of age. That's what he kept saying. That was scenario that he kept pushing."[50]

---

[48] Docket 343-6 at 3.

[49] Docket 346 at 25–26.

[50] Docket 346 at 27.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 14 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 14 of 17

This explanation of why Mr. Jayavarman thought he would not be convicted at trial is supported by evidence that was presented at trial, specifically phone calls between Mr. Jayavarman and an associate of his, "Erv." The Court has reviewed transcripts of 14 calls between Mr. Jayavarman and Erv made in 2013.[51] The calls reflect Mr. Jayavarman working through Erv to obtain a birth certificate for "Ana"—the person who Mr. Jayavarman had used to create the sexually explicit videos in Cambodia—that would show she was not a minor when Mr. Jayavarman made the videos. In the calls, Mr. Jayavarman and Erv discuss how Ana had disappeared and law enforcement may not be able to locate her and how a birth certificate showing she was not a minor would clear Mr. Jayavarman of the charges. These statements, made contemporaneously with when Mr. Butler would have been discussing the case with Mr. Jayavarman, lend credibility to Mr. Butler's assertion that Mr. Jayavarman believed he would not be convicted at trial.

### IV. Mr. Jayavarman did not present any evidence from Mr. Butler's co-counsel.

The Court has also considered the evidence that was not presented by Mr. Jayavarman. Specifically, the Court has considered that Mr. Jayavarman failed to present any testimony or sworn statements from Vikram Chaobal, who was his other defense attorney until after the trial. Mr. Jayavarman first hired Mr.

---

[51] Docket 343-1 through 343-14.

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 15 of 17
Case 3:13-cr-00097-SLG Document 347 Filed 01/26/21 Page 15 of 17

Chaobal to represent him and then hired Mr. Butler to co-counsel the case with Mr. Chaobal.[52] Mr. Butler testified that he and Mr. Chaobal discussed the fact that Mr. Jayavarman would not take a plea offer and would not agree to do any prison time.[53] Mr. Butler also testified that both he and Mr. Chaobal would visit Mr. Jayavarman, sometimes together and sometimes separately.[54] Given that Mr. Jayavarman has the burden of persuasion on his motion, the Court presumes and infers that Mr. Chaobal's testimony would not have favored Mr. Jayavarman.[55]

## CONCLUSION

For the foregoing reasons, the Court finds that Mr. Jayavarman has not established by a preponderance of the evidence that his trial counsel performed deficiently by failing to convey the Count 6 offer to him. Therefore, IT IS ORDERED that the Claim 1 of the Motion to Vacate at Docket 316 and the Amended Motion to Vacate at Docket 332 is DENIED. The Court further finds that as to Claim 1, Mr. Jayavarman has not made the requisite substantial showing of the denial of a constitutional right, and therefore a certificate of

---

[52] Docket 346 at 5, 24, 31.

[53] Docket 346 at 26.

[54] Docket 346 at 41.

[55] *Sparkman v. Comm'r*, 509 F.3d 1149, 1155 n.5 (9th Cir. 2007) ("Where the burden of production rests on a party, a court may, at its discretion, presume or infer from that party's failure to call a witness that the testimony the witness would have offered would not favor that party.").

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 16 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 16 of 17

appealability will not be issued by this Court.[56]  Mr. Jayavarman may request a certificate of appealability from the Ninth Circuit Court of Appeals.

This Court previously denied the motion as to Claim 2 at Docket 334, as well as declined to grant a certificate of appealability as to that claim.  Therefore, the Clerk of Court is directed to enter a final judgment as to both claims at this time.

DATED this 26th day of January, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[56] 28 U.S.C. §§ 2255(d), 2253(c)(2).  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding certificate of appealability may be granted only if applicant made a "substantial showing of the denial of a constitutional right," *i.e.*, a showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotations and citations omitted)).

Case No. 3:13-cr-00097-SLG, *United States v. Jayavarman*
Order Re Claim 1 of Motion to Vacate Pursuant to 28 U.S.C. § 2255
Page 17 of 17
Case 3:13-cr-00097-SLG   Document 347   Filed 01/26/21   Page 17 of 17